**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher David Lindvay,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-18-02868-PHX-JJT<br><br>**ORDER** |

Plaintiff Christopher Lindvay challenges the denial of his Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act (the Act). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 16, Pl. Br.) and Defendant Social Security Administration Commissioner's Response Brief (Doc. 17, Def. Br.).[1] The Court has reviewed the briefs and Administrative Record (Doc. 13, R.) and now reverses the Administrative Law Judge's (ALJ) decision (R. at 1026–59).

**I.     BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on November 25, 2012 for a period of disability beginning on October 19, 2009. (R. at 23.) After a hearing before an ALJ, Plaintiff's claim was denied on May 21, 2014. (R. at 20–49.) On

---

[1] Plaintiff did not reply to Defendant's Response Brief.

February 18, 2016, the United States District Court for the District of Arizona reversed the ALJ's decision and remanded Plaintiff's case for a new hearing. (R. at 1162–69.)

After a second hearing, the ALJ issued Plaintiff a partially favorable ruling on his claim. (R. at 1026–59.) The ALJ made three disability determinations for three different time periods between Plaintiff's alleged disability onset date—October 19, 2009—and his date last insured (DLI)—December 31, 2014. First, the ALJ determined that Plaintiff was *not* disabled from October 19, 2009 through June 11, 2013 (Period One). (R. at 1027.) Second, the ALJ found that Plaintiff was disabled from June 12, 2013 through October 7, 2014 (Period Two). (R. at 1027.) Third, the ALJ found that Plaintiff was again *not* disabled beginning on October 8, 2014 through December 31, 2014 (Period Three). (R. at 1028.) The ALJ found that on October 8, 2014, medical improvement occurred which ended Plaintiff's disability under the Act. (R. at 1028.)

The Court has reviewed the medical evidence in its entirety. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability during Period One based on the following severe impairments: (1) fibromyalgia, (2) seronegative rheumatoid arthritis variant/possible psoriatic arthritis, (3) mild focal right ulnar motor neuropathy at the elbow, (4) bilateral S1 radiculopathy, (5) migraine headaches, (6) mild carpal tunnel syndrome, (7) partial congenital fusion at C5–C6, (8) minimal cervical spondylotic changes at C4–C5 and C6–C7, (9) pelvic lymphadenopathy, (10) status post hernia repair, (11) attention deficit hyperactivity disorder, (12) affective disorder, (13) anxiety-related disorder, (14) mild degenerative disc disease of the spine. (R. at 1031.) For Periods Two and Three the ALJ found five additional severe impairments: (15) rheumatoid arthritis, (16) myalgia, (17) myositis, (18) chronic pain syndrome, (19) post laminectomy syndrome. (R. at 1046, 1053.)

The ALJ's residual functional capacity (RFC) determinations differed across the three periods. During Period One the ALJ found that Plaintiff could perform a reduced range of light work and would be able to perform jobs that exist in significant numbers in

the economy. (R. at 1044.) During Period Two the ALJ found that Plaintiff could perform a reduced range of sedentary work and would be off task for 15% due to pain per workday. (R. at 1047.) At Plaintiff's second hearing a vocational expert testified that Plaintiff could not work if he was off task due to pain for over 10% per workday. (R. at 1143.) Accordingly, the ALJ found Plaintiff would be unable to perform any jobs that exist in significant numbers in the national economy and was disabled during Period Two. (R.at 1053.) Finally, during Period Three the ALJ found that Plaintiff could perform a reduced range of sedentary work but would *not* be off task for 15% of the workday due to pain. (R. at 1055.) Accordingly, the ALJ found Plaintiff could work as a document preparer and was not disabled during Period Three. (R. at 1059.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe"

medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

If a person is disabled, his disability benefits can end if substantial evidence demonstrates that his impairments have medically improved such that he can engage in substantial gainful activity. *See* 42 U.S.C. § 423(f). To determine whether there is medical improvement an ALJ must compare the claimant's functional capacity when he was last disabled to his current RFC. 20 C.F.R. § 404.1594(b)(7).

### III. ANALYSIS

Plaintiff raises three arguments for the Court's consideration. First, he argues that the ALJ erred by finding medical improvement and, consequently, finding Plaintiff was not disabled beginning on October 8, 2014. (Pl. Br. at 1.) Second, he argues that the ALJ erred by rejecting the opinion of Dr. Mohammad Tariq, Plaintiff's treating physician, during Periods One and Three. (Pl. Br. at 1.) Third, he argues that the ALJ erred by rejecting medical opinions offered after his DLI. (Pl. Br. at 1.) The Court agrees with all three arguments.

**A. Substantial evidence does not support the ALJ's finding that medical improvement occurred beginning on October 8, 2014 because there were only isolated instances of partial improvement before and after that date.**

The ALJ found medical improvement because "[b]eginning October 8, 2014 the record shows the claimant was doing better with a combination of baclofen and his

hydromorphine pump. His limitations were not due to physical impairments, but only to mental impairments." (R. at 1055.) Plaintiff's pump was implanted on March 3, 2014, and between then and October 8, 2014, he reported some improvement in his symptoms. (R. at 1056.)

Nevertheless, the ALJ erred by finding there was medical improvement on October 8, 2014, because the improvement described in the medical records was incomplete and temporary. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1162–63 (9th Cir. 2014). Though the ALJ cited to records between March 3, 2014 and October 8, 2014 where Plaintiff reported reduced symptoms, even these records indicated that Plaintiff's symptoms had not meaningfully or permanently reduced. For example, on March 28, 2014, Plaintiff reported that his pain levels moderately improved, but he required "further pump titration". (R. at 3575.) Similarly, on July 17, 2014, Plaintiff reported moderate improvement, but complained of worsening muscle spasms. (R. at 3568.)

Additionally, medical records after October 8, 2014, indicate that Plaintiff's improvement because of his pump was short-lived. At a November 14, 2014 appointment with Dr. Derek Higgins, Plaintiff complained of pain in multiple areas and claimed that he was very limited in the activities he could perform due to pain and weakness. (R. at 1745.) Five days later Plaintiff reported to Dr. Higgins "that the last increase in his pump did help, but it wore off." (R. at 2256.) Finally, one year later, on November 13, 2015, Plaintiff reported severe pain in multiple areas including his lower back. (R. at 2165.)

Therefore, the ALJ's finding of medical improvement fails for two reasons; it is arbitrary, and it is contradicted by the medical evidence. Nothing is significant about the October 8, 2014 appointment with Dr. David Keelen that differentiates it from earlier appointments where Plaintiff also reported improvement due to his pump. (R. at 3558, 3575.) The ALJ did not explain why Plaintiff was no longer disabled beginning on that date, and consequently, it appears to be arbitrarily selected. Similarly, the ALJ did not explain why Plaintiff's RFC no longer contained the work-preclusive 15% off-task

limitation beginning on October 8, 2014. The failure to explain why that limitation disappeared on that date was error.[2] Finally, as discussed above, the medical evidence does not support the ALJ's finding. Instead, the ALJ cherry-picked isolated instances of partial and temporary improvement to support her determination that there was medical improvement. This was error.

**B. The reason the ALJ gave for rejecting Dr. Tariq's opinion was either nonexistent or arbitrary.**

Plaintiff began treatment with Dr. Tariq on June 21, 2012 for pain management. (R. at 404.) On August 22, 2013, Dr. Tariq provided a medical source statement on Plaintiff's behalf. (R. at 666–67.) Dr. Tariq opined to various functional limitations due to Plaintiff's constant pain and weakness. (R. at 668.) Furthermore, Dr. Tariq found that Plaintiff would be off task for 15% per workday due to his impairments. (R. at 670.)

The ALJ gave the opinion great weight, but only during Period Two. (R. at 1050.) The ALJ does not explain why the opinion was given great weight only during Period Two, but she observed that the opinion was given during Period Two. (R. at 1050.) Defendant contends that the ALJ noted that Dr. Tariq's opinion was only applicable and probative during the period where the ALJ found Plaintiff was disabled—Period Two. (Def. Br. At 8.) But the ALJ did not say that. Instead, the ALJ was silent on the weight given to Dr. Tariq's opinion during Periods One and Three.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The medical opinion of a claimant's treating physician is given 'controlling

---

[2] The ALJ also failed to explain why the 15% off-task RFC limitation originated on June 12, 2013. (R. at 1047.) Similarly, the ALJ failed to explain why she found that Plaintiff had five additional severe impairments beginning on June 12, 2013. (R. at 1046.) The medical evidence shows that these impairments were documented before June 12, 2013. (R. at 3418, 3425.)

weight' so long as 'it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the record]." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)). If a treating physician's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(d)(2)–(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. If a treating physician's opinion is contradicted by another doctor's opinion, the ALJ cannot reject the treating physician's opinion without "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

Even if the Court assumes the ALJ gave no weight to Dr. Tariq's opinion during Periods One and Two, the ALJ did not give a specific and legitimate reason for doing so. Indeed the ALJ did not give *any* reason for rejecting Dr. Tariq's opinion. (R. at 1050.) Even if the Court construes the ALJ's reason as Defendant contends, the ALJ's rationale still fails. A treating physician's opinion is not inapplicable or divested of all weight simply because the ALJ finds the claimant is not disabled during the period the opinion is given. That is backwards. Instead, the ALJ must consider and reject medical opinions *before* concluding a claimant is not disabled. The fact that the ALJ found Plaintiff was not disabled in Period One and Three does not affect the weight of Dr. Tariq's opinion during those Periods. Consequently, the ALJ erred.[3]

  **C.**   **The ALJ erred in rejecting Dr. Higgins opinion because his opinion was relevant before Plaintiff's DLI.**

After Plaintiff's DLI, Dr. Higgins, Dr. Syerra Lea, and Kristy Babbitt completed medical source statements on Plaintiff's behalf. (R. at 3832, 5115, 5218.) They each opined to various functional limitations due to Plaintiff's medical impairments. Plaintiff began

---

[3] The Court notes that Dr. Tariq began treating Plaintiff during Period One. (R. at 3467.) Accordingly, some explanation was warranted as to why his opinion was not given weight for that period since he treated Plaintiff during that period.

- 7 -

treating with Dr. Higgins on November 13, 2014, before his DLI. (R. at 2165.) Dr. Lea and Ms. Babbitt began treating Plaintiff after his DLI. (R. at 3664, 5115.) The ALJ rejected each opinion because "they pertain to events well after the date last insured." (R. at 1057.)

Medical evaluations and records made after the DLI are relevant when evaluating a claimant's functionality before the DLI. *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). Still, an ALJ may consider the length of a treatment relationship and the frequency of examination when weighing a medical opinion. *See* 20 C.F.R. § 404.1527(c)(2)(i).

The ALJ did not provide a specific and legitimate reason for rejecting the opinions of Dr. Higgins and Dr. Lea, or a germane reason for rejecting Ms. Babbitt's opinion.[4] Thus she erred. The ALJ could have reduced the weight given to the opinions because they were not near enough in time to the relevant periods in this case. But it was error to reject the opinions simply because they were given after the DLI. *See Smith*, 849 F.2d at 1225. Medical evidence is not relevant only on the date it originates. Instead, it can work backwards and provide evidence of a claimant's functionality before and after the date it originates. *Id.*

Here, the ALJ's rejection of Dr. Higgins was error because Dr. Higgins opined to limitations dating back to Plaintiff's disability onset date and he began treating Plaintiff before his DLI. (R. at 5221.) Even though his opinion was given after Plaintiff's DLI, it was still relevant and relied on a treatment relationship predating the DLI. (R. at 5220.) The error was not harmless because Dr. Higgins offered evidence directly relevant to the period at issue that was summarily rejected. *See Molina*, 674 F.3d at 1115 (defining harmless error as an error that does not affect the ALJ's nondisability determination).

It was also error for the ALJ to reject Dr. Lea's and Ms. Babbitt's opinions for the same reason, but those errors were harmless. These opinions were offered after Plaintiff's DLI and relied on treatment postdating the DLI, so their rejection did not meaningfully affect the ALJ's nondisability determination.

---

[4] While a specific and legitimate reason is required to reject a treating physician's contradicted opinion, only a germane reason is needed to reject a non-physician's opinion. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### D. The proper remedy is to remand Plaintiff's case for a calculation of benefits.

The credit-as-true rule, if applied here, would result in a remand of Plaintiff's case for a calculation and payment of benefits. *Garrison*, 759 F.3d at 1020. It applies if each part of a three-part test is satisfied. *Id*. First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*. The credit-as-true rule allows for some flexibility and balances efficiency and fairness with the requirement that a claimant actually be disabled in order to receive benefits. *Id*. at 1021. Thus, even if all the rule's requirements are met, the Court may still decline to apply the rule if there is "serious doubt" that the claimant is, in fact, disabled. *Id*.

All of the elements of the credit-as-true rule are met. First, the record is fully developed and remand for additional proceedings would serve no useful purpose. Second, the ALJ improperly determined that medical improvement occurred and errantly rejected the opinions of Plaintiff's treating physicians, Dr. Tariq and Dr. Higgins. These errors resulted in the selection of arbitrary dates for when Plaintiff was and was not disabled. Finally, if the improperly rejected opinions were credited as true, the ALJ would be required to find Plaintiff disabled from his alleged onset date through his DLI. The ALJ found Plaintiff was disabled during Period Two because she found Plaintiff would be off-task for 15% of the workday and that limitation is work-preclusive. (R. at 1045, 1047, 1143.) Both Dr. Tariq and Dr. Higgins opined that Plaintiff has this limitation. (R. at 670, 5220.)

Finally, there is not serious doubt that Plaintiff is disabled. His medical impairments are extensively documented over many years and the record reveals that improvement has been elusive. Efficiency also supports this result. Plaintiff has pursued his claim over many years and the District Court previously evaluated and remanded his case in February 2016.

(R. at 1164–1170.) These considerations justify remanding this case for a calculation of benefits.

**IT IS THEREFORE ORDERED** reversing the June 27, 2018 decision of the Administrative Law Judge (R. at 1021–1076).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits for a period of disability beginning on October 19, 2009 continuing through December 31, 2014.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 20th day of February, 2020.

Honorable John J. Tuchi
United States District Judge